UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUMAN L. S.,[1]

                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06925 (JJM)

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to supplemental security income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 14].[2] The parties have consented to my jurisdiction [13]. Having reviewed their submissions [10, 14, 16], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

### BACKGROUND

        The parties' familiarity with the 974-page administrative record (collectively, [5], [5-1], and [5-2]) is presumed. Plaintiff filed for benefits in March 2016, when he was 37 years old, alleging a disability beginning on March 3, 2016, due to mental health issues. Id., pp. 10, 18, 160, 164.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only the first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper right corner of the page).

After plaintiff's claims were initially denied, an administrative hearing was held on July 20, 2018 before Administrative Law Judge ("ALJ") Paul Greenberg. Id., pp. 25-51 (transcript of hearing). Plaintiff, who was represented by an attorney, testified along with a vocational expert. Id., pp. 31-51. On December 31, 2018, ALJ Greenberg issued a decision finding that plaintiff was not disabled. Id., pp. 10-20. In reaching that determination, ALJ Greenberg found that plaintiff's severe impairments were bipolar disorder with psychotic features and schizophrenia. Id., p. 13.[3] The record contains the following medical opinions concerning plaintiff's functional, nonexertional limitations:

1. Consultative examiner Christine Ransom, Ph.D. examined plaintiff on May 18, 2016. Id., pp. 217-220. She agreed with the diagnosis of "[b]ipolar disorder with psychotic features" and remarked it was "currently mild". She opined that plaintiff "will have mild difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks, perform complex asks, relate adequately with others and appropriately deal with stress due to bipolar disorder with psychotic features currently mild". Id., p. 219.

2. State agency psychological consultant C. Butensky, Ph.D. authored a report on June 14, 2016 after her review of the information in the file, including Dr. Ransom's report. Id., pp. 69-80. She opined that plaintiff "retains the capacity to perform simple job tasks", but "has mild to moderate limitations in his ability to sustain

---

[3] ALJ Greenberg found that plaintiff's physical impairments, including hypertension and gout, were nonsevere. Administrative Record, p. 13. ALJ Greenberg also explained that plaintiff's "extensive mental health treatment records" contain a number of diagnoses. However, "[a]ny depressive or psychotic symptoms (and their related diagnoses) are encompassed sufficiently within the broader categories of bipolar disorder and schizophrenia, regardless of the terminology used". Id., note 1. The plaintiff does not challenge these findings.

attention and concentration, adapt to changes in a routine work setting, and interact appropriately with coworkers and supervisors", which would be "somewhat reduced, but adequate to handle brief and superficial contact." Id., p. 74. "Similarly, the ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting." Id.

3. Plaintiff's treating Licensed Clinical Social Worker ("LCSW") (see id., pp. 670-72 (treatment note)), Ashley Colosi, completed a Monroe County Department of Human Services Psychological Assessment for Determination of Employability on October 12, 2017. Id., pp. 857-60. She indicated that plaintiff was "Moderately Limited" in several functional areas:

(10) EMPLOYABILITY DETERMINATION:

| A. FUNCTIONAL LIMITATIONS/CLINICAL OBSERVATIONS: | Normal Functioning No evidence of limitation | Moderately Limited Unable to function 10-25% of the time | Very Limited Unable to function 25% or more of the time | Insufficient Data |
|---|---|---|---|---|
| Demonstrates the capacity to follow, understand and remember simple instructions and directions | ☐ | ☑ | ☐ | ☐ |
| Demonstrates the capacity to perform simple and complex tasks independently | ☐ | ☑ | ☐ | ☐ |
| Demonstrates the capacity to maintain attention and concentration for role tasks | ☐ | ☑ | ☐ | ☐ |
| Demonstrates the capacity to regularly attend to a routine and maintain a schedule | ☐ | ☑ | ☐ | ☐ |
| Demonstrates the capacity to maintain basic standards of hygiene and grooming | ☐ | ☑ | ☐ | ☐ |
| Demonstrates the capacity to perform low stress and simple tasks | ☐ | ☑ | ☐ | ☐ |

Id., p. 859. She concluded that plaintiff had the "ability to participate in activities (e.g. work, education, and training)" for only 5-10 hours per week (id.) with the following accommodations:

> C. **REASONABLE ACCOMMODATIONS:** Must be completed if any box from # 2 on previous page is checked
>
> Describe any necessary reasonable accommodations which are <u>recommended</u> based on identified disabilities:
>
> physical labor, solitary work, slower pace, low supervision, factory work, couple short shifts, flexibility, quiet environment
>
> Describe any working conditions, environments or work activities which are <u>contraindicated</u>:
>
> child care, high stress, many people

Id., p. 860. In addition, Ms. Colosi stated in letter dated January 15, 2018 that plaintiff's "symptoms are currently in remission due to ongoing medication compliance". Id., p. 239. On October 12, 2017, LCSW Colosi's treatment note stated plaintiff was on the same medications that she identified in her January 15, 2018 letter. Id., pp. 670-71. Her treatment notes dated October 12, 2017 and January 15, 2018 both indicate that plaintiff was "compliant" with his medications. See id., pp. 671, 755.

4.  Plaintiff's treating Licensed Mental Health Counselor ("LMHC") (*see* id., pp. 834-37 (treatment note)), Daniel Prince, completed another Monroe County Department of Human Services Psychological Assessment for Determination of Employability on April 27, 2018. Id., pp. 853-56. He indicated that plaintiff was "Moderately Limited" in several functional areas:

**(10) EMPLOYABILITY DETERMINATION:**

| A. FUNCTIONAL LIMITATIONS/CLINICAL OBSERVATIONS: | Normal Functioning No evidence of limitation | Moderately Limited Unable to function 10-25% of the time | Very Limited Unable to function 25% or more of the time | Insufficient Data |
|---|---|---|---|---|
| Demonstrates the capacity to follow, understand and remember simple instructions and directions | ☐ | ☐ | ☒ | ☐ |
| Demonstrates the capacity to perform simple and complex tasks independently | ☒ | ☐ | ☐ | ☐ |
| Demonstrates the capacity to maintain attention and concentration for role tasks | ☐ | ☐ | ☒ | ☐ |
| Demonstrates the capacity to regularly attend to a routine and maintain a schedule | ☐ | ☒ | ☐ | ☐ |
| Demonstrates the capacity to maintain basic standards of hygiene and grooming | ☐ | ☒ | ☐ | ☐ |
| Demonstrates the capacity to perform low stress and simple tasks | ☒ | ☐ | ☐ | ☐ |

DOES PATIENT DEMONSTRATE THE CAPACITY TO USE PUBLIC TRANSPORTATION: ☐ YES ☒ NO

Id., p. 855. He concluded that plaintiff had the "ability to participate in activities (e.g. work, education, and training)" for up to 8 hours per week (id.), but did not recommend any additional accommodations. LMHC Prince noted in his April 27, 2018 treatment note that plaintiff was "compliant" with medications. Id., p. 835.

5.     Finally, plaintiff participated in a vocational rehabilitation program. Several of the case notes from his counselor, Stephanie Monfort, appear in the record. See id., pp. 897-918. In her October 2, 2017 Case Note, Ms. Monfort makes several statements concerning plaintiff's "functional capacities":

> Documentation and/or observation identifies limitations in the following functional capacities:
>
> **Communication:** Due to the impairment, Juman has problems with:
>
> *Expressive Communication.* As a result, he has difficulty explaining information coherently;
>
> **Interpersonal:** Due to the impairment, Juman has problems with:
>
> *Social Interaction.* As a result, personal interactions are impaired due to behavior which is inappropriate; personal interactions are impaired due to behavior which is withdrawn; has few or no support systems available; is frequently upset or irritated;
>
> *Work Interaction.* As a result, he has difficulty working in a group;
>
> **Work Skills.** Due to the impairment, Juman has problems with:
>
> *Work Skills.* As a result, he has difficulty generating strategies to solve a problem; has difficulty retaining learned information for more than six months; has very few general or personal skills that are transferable to a new job situation;
>
> **Work Tolerance:** Due to the impairment, Juman has problems with:
>
> *Environmental Conditions.* Juman is unable to tolerate environmental conditions found in work. As a result, he is capable of functioning only in a highly selective setting;o must avoid stressful conditions, such as too much pressure or too big of crowds; needs a structured work situation; has placement options that are limited to some degree by disability requirements;

Id., pp. 911-12.

ALJ Greenberg assessed plaintiff with the Residual Functional Capacity ("RFC") to perform work at all exertional levels, with nonexertional limitations:

> "[T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant cannot work in a fast-paced production environment. The claimant can perform simple, routine tasks. The claimant can have frequent interaction with supervisors as part of a job, occasional interaction with co-workers, and no interaction with the public."

Id., p. 15.

In reaching that RFC, ALJ Greenberg afforded "significant" weight to the opinion of Dr. Ransom because she "is familiar with the Social Security Administration program." Id., p. 17. ALJ Greenberg noted that "Dr. Ransom assessed relatively mild limitations", but noted that, "[i]n light of the repeated diagnoses of significant mental health conditions (psychosis, schizophrenia, paranoia, bipolar), it is my view that Dr. Ransom's report, based on a one-time evaluation, may understate the claimant's degree of mental limitation." Id. ALJ Greenberg nevertheless concluded that "the reports from the vocational training specialist . . . suggest a level of functional ability that would not preclude work within the residual functional capacity". Id. Although ALJ Greenberg noted that claimant "felt well enough to engage in vocational training" (id.), and started services in December 2017, he did not acknowledge or otherwise discuss the functional assessments included in Ms. Monfort's case note.

ALJ Greenberg accorded "limited" weight to Dr. Butensky's assessment. He found that "Dr. Butensky's assessment of severe mental health conditions" was "consistent with both the assessment of Dr. Ransom and the treatment records", but that "Dr. Butensky's assessment of the precise mental limitations understates somewhat the level of the claimant's

impairment, particularly in light of the full medical evidence showing early diagnosis of the conditions, longstanding treatment, and medication management". Id., pp. 17-18.

      He gave "no weight" to the employability assessments completed by LCS Colosi and LMHC Prince, "which point to a degree of mental limitation that would preclude work". Id., p. 18. He did not acknowledge that they were completed by plaintiff's treating mental health providers. Instead, he stated the were "provided by Monroe County Department of Human Services". He discounted those assessments because they "are prepared for a different government program that applies different standards". By contrast, he found "the assessments of Dr. Ransom and Dr. Butensky generally to be more persuasive, particularly in the context of the disability standards applicable in this case." Id.

      Finally, although LCSW Colosi's January 15, 2018 letter "is not necessarily an opinion on functioning and it is not provided by an acceptable medical source", ALJ Greenberg gave it "significant weight":

> "Ms. Colosi is a licensed therapist who treated the claimant at Genesee Health for some time. During the course of that treatment, Ms. Colosi assessed the symptoms of the claimant's paranoid schizophrenia as 'currently in remission due to ongoing medication compliance' . . . At the very least, this supports some degree of improvement in the claimant's functioning over time."

Id.

      Based on the RFC and the vocational expert's testimony, ALJ Greenberg concluded that plaintiff retained the ability to perform other jobs in the national economy, and therefore was not disabled from March 14, 2016, the alleged onset date, through the date of his decision. Id., pp. 19-20. Thereafter, this action ensued.

ANALYSIS

A.   **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.   **Did ALJ Greenberg Properly Assess LCSW Colosi's and LMHC Prince's Opinions?**

Plaintiff argues the ALJ erred when he assigned "no weight" to the functional assessments of LCSW Colosi and LMHC Prince. Plaintiff's Memorandum of Law [10-1], p. 21-24. Although plaintiff agrees that ALJ Greenberg was not required to find these "other source" opinions controlling (id., p. 21), he argues the ALJ was nonetheless required to evaluate them "according to a number of factors, including the length, nature and extent of the treatment relationship and the frequency of examination; evidence in support of the opinion; the opinion's consistency with the record as a whole; and other relevant factors". Id., p. 21, quoting Evans v. Colvin, 649 Fed. App'x 35, 38-39 (2d Cir. 2016) (Summary Order).

The Commissioner argues that the ALJ properly rejected the assessments because they "were neither binding nor persuasive in the context of the Social Security program". In

addition, the ALJ pointed out that, in her January 15, 2018 letter, LCSW Colosi "acknowledged that she does not assess her clients['] work readiness and/or employability." Commissioner's Brief [14-1], p. 14.

       I agree with plaintiff that the ALJ erred when he failed to analyze the functional assessments of LCSW Colosi and LMHC Prince according to the SSA's own rules. Accordingly, remand is required for a proper RFC analysis, and for further development of the record, if necessary. It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order).  However, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. *See* Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruing 96-8p (1996)").

       Social Security Ruling ("SSR") 06-03P[4] states that the same factors used to consider opinions from "acceptable medical sources" will be used to examine evidence from medical sources who are not "acceptable medical sources", such as licensed clinical social workers and other therapists, and from non-medical sources, like "rehabilitation counselors". SSR 06-03P, 2006 WL 2329939 (2006), pp. *2, *4.

       "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the

---

[4]    SSR 06-03P was rescinded for claims filed on or after March 27, 2017.  *See* 82 F.R. 15263-01, 2017 WL 1105348 (F.R.) (March 27, 2017) ("This rescission will be effective for claims filed on or after March 27, 2017").  Plaintiff filed this claim on August 31, 2012.

'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c), which applies to claims for Social Security Disability benefits and contains provisions identical to those in 20 CFR §416.927(c), applicable here in the context of this claim for SSI).[5] While the conclusions reached by another agency concerning whether a person is disabled are not binding on the Commissioner, the SSA has stated that it "will evaluate the opinion evidence from medical sources, as well as 'non-medical sources' who have had contact with the individual in their professional capacity, used by other agencies, that are in our case record, in accordance with 20 CFR . . . 416.927". SSR 06-03P, p. *7.

        Moreover, where an RFC incorporates some portions of the treating source's functional assessment, but not others, remand is appropriate. "The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006).

        ALJ Greenberg gave "no weight" to the employability assessments completed by LCSW Colosi and LMHC Prince. In doing so, he failed to acknowledge that they were authored by plaintiff's treating mental health professionals and identified them as "assessments provided by Monroe County Department of Human Services". Id., p. 18. He acknowledged that they

---

[5] "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4 (S.D.N.Y. 2019). This claim was filed before that date.

"point to a degree of mental limitation that would preclude work". Id.  In discounting them, however, he did not point to any of the medical or other evidence in the record or consider any of the other factors required by SSR 06-03 or Burgess, supra.  Instead, he stated that they were "prepared for a different government program that applies different standards" than the SSA.  Id.  ALJ Greenberg explained that he finds "the assessments of Dr. Ransom and Dr. Butensky generally to be more persuasive, particularly in the context of the disability standards applicable in this case".  Id.  However, he did not describe which parts of the functional assessments of LCSW Colosi and LMHC Prince conflict with those of Drs. Ransom and Butensky.  Nor did he explain, given his opinion that both Drs. Ransom and Butensky "understate" plaintiff's limitations (see id., pp. 17-18), why or how the functional assessments of plaintiff's treating mental health providers overstated his limitations.

These failures are highlighted by the "significant" weight that ALJ Greenberg assigns to another piece of evidence authored by LCSW Colosi: her January 15, 2018 letter.  *See* id., p. 18.  In discussing his reasons for assigning that opinion significant weight, he noted that "Ms. Colosi is a licensed therapist who treated the claimant . . . for some time".  Id.  ALJ Greenberg did not state why he found LCSW Colosi's history of treating the plaintiff significant with respect to a statement that he interpreted as supporting "some degree of improvement in the claimant's functioning over time", but not worthy of mention with respect to "a degree of mental limitation that would preclude work".  Id.

The Commissioner argues that the ALJ "properly afforded the employability assessments no weight" for the additional reason that LCSW Colosi's January 15, 2018 letter, "in contrast to her employability assessments", "acknowledged that she does not assess her clients['] work readiness and/or employability".  Commissioner's Brief [14-1], p. 14.  However,

"[g]enuine conflicts in the medical evidence are for the Commissioner to resolve". <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002).  Even if the Commissioner's explanation would have been a valid basis to give little weight to LCSW Colosi's opinion, since "neither the ALJ nor the Appeals Council analyzed the substance of [the] opinion, the court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" <u>Jessica R. v. Berryhill</u>, 2019 WL 1379875, *10 (D. Vt. 2019) (*quoting* <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999)).  Further, to the extent that LCSW Colosi's statements are contradictory and require clarification, the ALJ could have recontacted her.

        Remand is required because ALJ Greenberg did not acknowledge that the employability assessments were authored by plaintiff's treating mental health providers, nor did he discuss any of the functional assessments contained therein as required by SSR 06-03P and <u>Burgess</u>, <u>supra</u>.  Although he is not required to credit the conclusions in the assessments concerning disability or employability, he may not simply ignore them in their entirety. *See* <u>Stack v. Commissioner</u>, 2020 WL 5494494, *4-6 (W.D.N.Y. 2020) (finding that, although not required to accept the VA's determination of disability, the ALJ nonetheless "committed legal error in failing to address the functional assessments" in the record).

        Even if ALJ Greenberg ultimately discounts these opinions for permissible reasons, plaintiff is "entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits."  <u>Dioguardi</u>, 445 F.Supp.2d at 297. For the same reasons, and in accordance with SSR 06-03P, ALJ Greenberg shall also address upon remand the functional assessments contained in the case notes of Ms. Monfort, plaintiff's vocational rehabilitation counselor.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [10] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [14] is also denied.

**SO ORDERED**.

Dated: March 24, 2021                             /s/ Jeremiah J. McCarthy
                                                  JEREMIAH J. MCCARTHY
                                                  United States Magistrate Judge